UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

TIMOTHY DAVID TILTON,                )
                                     )
    Plaintiff                        )
                                     )
v.                                   )   No. 1:14-cv-00153-JCN
                                     )
CAROLYN W. COLVIN, Acting Commissioner)
of Social Security,                  )
                                     )
    Defendant                        )

## MEMORANDUM OF DECISION[1]

Plaintiff Timothy Tilton applied for disability insurance benefits under Title II and Title XVI of the Social Security Act. Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has severe impairments, but that he retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits.

As explained below, following a review of the record, and after consideration of the parties' written and oral arguments, the Court vacates the administrative decision and remands the matter for further proceedings.

### THE ADMINISTRATIVE FINDINGS

The ALJ's decision[2] tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 404.1520. (ALJ Hearing Decision, ECF No. 6-2.) The ALJ found that Plaintiff meets the insured status requirements of Title II through December 31, 2013. (*Id.* ¶ 1.) At step 1 of the sequential evaluation process, the ALJ determined

---

[1] The parties have filed a consent authorizing the undersigned to conduct any and all proceedings and enter a final order and judgment in this matter.

[2] Because the Appeals Council "found no reason" to review that decision (PageID # 22), the Acting Commissioner's final decision is the October 19, 2012, decision of the Administrative Law Judge.

that Plaintiff has not engaged in substantial gainful activity beginning September 25, 2009, the date of alleged onset of disability. (*Id.* ¶ 2.) At step 2, the ALJ concluded that Plaintiff suffers degenerative disk disease of the lumbar spine, which is a severe impairment. (*Id.* ¶ 3.) At step 3, the ALJ determined that Plaintiff's impairment does not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id.* ¶ 4.)

Prior to further evaluation at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity (RFC) and found that Plaintiff can perform light work, 20 C.F.R. § 404.1567(b), except that he can stoop and crouch only on an occasional basis. (*Id.* ¶ 5.) In making this finding, the ALJ gave "little weight" to each of the expert opinions that he considered, and did not cite an expert opinion that corresponded with his assessment of Plaintiff's RFC. (*Id.*)

At step 4, the ALJ determined that Plaintiff's limitations do not prevent Plaintiff from performing past relevant work in shoe manufacturing. (*Id.* ¶ 6.) Additionally, in a step 5 alternative finding, the ALJ concluded that Plaintiff is able to perform other substantial gainful activity, including in the cleaning, price marker, and mail sorter occupations. (*Id.*) In support of his alternative finding, the ALJ asserted that Plaintiff could perform the jobs of price marker and mail sorter "even with the reduced capacity for light work expressed within Dr. Lorenzo's treating source opinion." (*Id.*) Ultimately, the ALJ concluded that Plaintiff has not been under a disability from September 25, 2009, through the date of the ALJ's decision. (*Id.* ¶ 7.)

## DISCUSSION

Plaintiff argues that the ALJ erred in his residual functional capacity assessment because he rejected the opinions of an examining physician and a treating source, and did not expressly rely on any medical opinion of record. (Statement of Errors at 2, 4.) Plaintiff notes that although the record includes an "agency evaluation" (R. 74-75) that offers the same RFC as the RFC

2

determined by the ALJ, the evaluation is immaterial because the ALJ did not cite the evaluation and because the physician who made the evaluation did not consider subsequent evidence, including an EMG that reflected that Plaintiff suffers from Axonal Neuropathy. (*Id.* at 2, n.1.) In fact, Plaintiff maintains that the ALJ failed to acknowledge the diagnosis of Axonal Neuropathy, and failed to mention the opinion of Plaintiff's primary care provider, Mary Dunlap. (*Id.* at 3-5.) Plaintiff also argues that the decision is deficient regarding its discussion of Plaintiff's credibility and the impact of Plaintiff's obesity on his degenerative disk disease. (*Id.* at 6-7.)

**A. Standard of Review**

The Court must affirm the administrative decision provided that the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B. Analysis**

A review of the record reveals that the ALJ (1) rejected the opinions of two consulting physicians (Drs. Axelman and Trumbull), (2) rejected the opinion of Plaintiff's treating physician (Dr. Lorenzo), (3) failed to cite any expert opinion as a basis for his RFC finding, and (4) failed to address and thus failed to seek an expert consultation regarding Plaintiff's Axonal Neuropathy. Simply stated, given the lack of expert opinion evidence to support the ALJ's RFC determination,

3

and given the lack of medical evidence to support the ALJ's disregard of Plaintiff's Axonal Neuropathy, to reach his conclusions, the ALJ must have inappropriately interpreted raw medical data. *See Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 17 (1st Cir. 1996) ("With a few exceptions …, an ALJ, as a lay person, is not qualified to interpret raw data in a medical record."). Accordingly, remand is warranted.[3]

## CONCLUSION

Based on the foregoing analysis, the Court vacates the administrative decision and remands the matter for further proceedings.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 14th day of January, 2015.

---

[3] The ALJ's discussion of obesity also appears to be lacking, particularly as obesity appears to have been a factor relevant to the RFC assessment offered by the treating pain specialist, Dr. Lorenzo. (Exs. 15F, 20F.) The ALJ limited his consideration of obesity to a cursory step 2 assessment that the condition was not severe, without revisiting the impact obesity has on Plaintiff's RFC when considered alongside Plaintiff's lumbar degenerative disk disease. *See Titles II & XVI: Evaluation of Obesity*, SSR 02-1P (S.S.A. Sept. 12, 2002) ("When we identify obesity as a medically determinable impairment …, we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify.").